IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

CENTER FOR BIOLOGICAL DIVERSITY and
FOOD & WATER WATCH,

      Plaintiffs,

v.

SWIFT BEEF COMPANY,

      Defendant.

_____

## COMPLAINT

_____

## INTRODUCTION

1.      Plaintiffs Center for Biological Diversity and Food & Water Watch bring this civil action to enforce the Federal Water Pollution Control Act (commonly known as the Clean Water Act and herein referred to as the "CWA"), 33 U.S.C. § 1251 *et seq.*, against Defendant Swift Beef Company (Swift Beef), a/k/a JBS Swift Beef Company.  At its Lone Tree Wastewater Treatment Facility (Lone Tree Facility) in Greeley, Colorado, Swift Beef accepts and treats wastes from two animal slaughterhouses and then discharges the effluent into Lone Tree Creek, a tributary of the South Platte River, under the authority of a CWA permit (the "Permit") issued by the Water Quality Control Division (Water Division) of the Colorado Department of Public Health and Environment (Colorado Department).  Swift Beef has violated and will continue to violate the CWA and the terms and limitations found in its Permit.

2.      Plaintiffs and their members are harmed by Swift Beef's violations and actions that pollute Lone Tree Creek and the South Platte River, adversely impact the aquatic

environment, and contribute to regional air pollution.  As authorized by the CWA's citizen suit provision, 33 U.S.C. § 1365(a), Plaintiffs seek declaratory and injunctive relief, an assessment of civil penalties, attorney and expert witness fees, and other relief that the Court deems appropriate to remedy Swift Beef's violations of federal law.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action under 33 U.S.C. § 1365(a) (CWA's citizen suit provision) and 28 U.S.C. § 1331 (federal question jurisdiction).  The requested relief is proper under 28 U.S.C. §§ 2201 and 2202 and 33 U.S.C. §§ 1319 and 1365(a).

4.     On January 31, 2019, Plaintiffs provided Swift Beef—via U.S. certified mail, returned receipt requested—with notice of intent to sue for CWA violations at the Lone Tree Facility, as required by 33 U.S.C. § 1365(b).  Plaintiffs also provided the notice to the U.S. Environmental Protection Agency (EPA) (both EPA headquarters and EPA Region 8), the U.S. Attorney General, the Colorado Department, and Swift Beef's registered agents.

5.     More than sixty days have passed since Plaintiffs sent the notice and Swift Beef received the notice.  Neither the EPA nor the State of Colorado has commenced and is diligently prosecuting a civil or criminal action in court to enforce and correct the CWA violations that Plaintiffs are alleging in this complaint.  Neither EPA nor the Colorado Department commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or under a comparable state law to redress the alleged violations before Plaintiffs issued the January 31, 2019 notice letter.  Swift Beef's violations of the CWA and its CWA Permit have been repeated, are ongoing and are likely to continue to occur into the future absent judicial relief.

6.     Venue is proper in the District Court for the District of Colorado pursuant to 33 U.S.C. § 1365(c)(1).  Plaintiffs have offices and members throughout Colorado.  Swift Beef has

offices in Greeley, Colorado and Swift Beef's Lone Tree Facility is located in Greeley, Colorado.

## PARTIES

7.      The Center for Biological Diversity is a national non-profit, conservation organization with multiple offices, including in Denver, Colorado, and over 30,000 members and supporters in Colorado.  To fulfill its mission, the Center has programs and campaigns that address the plight of the nation's imperiled species and habitats, including the extensive harms caused by large-scale animal agriculture on biodiversity, water quality, public health, and sustainable food systems.  To educate the public and its members and supporters, the Center has developed outreach and policy materials on the negative effects of industrial agricultural systems on our environment, including from pesticide use, greenhouse gas and other harmful air emissions, water pollution from animal wastes, and the overuse of water resources.

8.      Food & Water Watch is a national nonprofit organization.  Food & Water Watch maintains an office in Denver and has more than 12,000 members in Colorado.  As part of its mission, Food & Water Watch champions healthy food and clean water by confronting corporations that put profits before people and by advocating for a democracy that protects the environment and improves people's lives.  To fulfill its mission, FWW tackles water pollution problems, large-scale factory farming, and slaughterhouses.  The organization is engaged in numerous campaigns to hold food-industry polluters—including corporate slaughterhouses and their wastewater treatment facilities—accountable for adverse impacts on rural communities and the environment.  Through grassroots organizing, policy advocacy, research, communications and litigation, Food & Water Watch works to increase transparency about the factory farm industry's harmful impacts, reduce pollution of the nation's waterways and air quality caused by

industrial meat producers, and strengthen public and government oversight of livestock production.

9.      The Center for Biological Diversity and Food & Water Watch bring this lawsuit on behalf of themselves and their members.  To advance their missions, the organizations engage in actions that protect and restore major waterways, their tributaries and watersheds, the fish and wildlife and people that depend on these aquatic environments, and regional air quality.  They also take actions that increase transparency and accountability in the meat industry for all of its adverse environmental impacts.  Members of both the Center for Biological Diversity and Food & Water Watch use and enjoy the waters of Lone Tree Creek and the South Platte River as well as the aquatic environment and dependent wildlife associated with these waterways for aesthetic enjoyment and recreational activities, including fishing, hunting, swimming, boating, bird and wildlife viewing, hiking, and walking; they intend to continue to do so.  Swift Beef's unauthorized and illegal discharges from the Lone Tree Facility and noncompliance with the Permit's terms—including terms requiring Swift Beef to conduct testing and to provide detailed information about its effluent discharges, sampling, and testing—injure members that engage in these recreational and aesthetic uses and deter and limit their uses and enjoyment of these places now and in the future.  These injuries will continue unless the Court grants the requested relief.

10.     Swift Beef's violations of the CWA and its CWA Permit interfere with and undermine the organizations' ability to fulfill their missions and objectives.  The Center for Biological Diversity and Food & Water Watch have directed some of their resources to identify and counteract Swift Beef's illegal effluent discharges into Lone Tree Creek and the South Platte River and its failure to comply with procedural and informational Permit requirements.  The organizations have spent staff time and resources informing and educating their members and

supporters and the public about the Lone Tree Facility and Swift Beef's nearby beef slaughterhouse—which pipes its wastewater to the Lone Tree Facility—and the Facility's CWA violations.  In order to inform and educate members, supporters, and the public about the Lone Tree Facility and counteract Swift Beef's CWA violations, the organizations' staff have researched and investigated industry practices at slaughterhouses, hide processing techniques, and technologies available for animal-waste treatment facilities; engaged with local and regional media outlets to promote awareness about the Lone Tree Facility and its Permit violations; had meetings and discussions with the Water Division and EPA about their response to years of CWA violations at the Facility; notified members and supporters about the pollution in the South Platte River and Lone Tree Creek due to violations at the Lone Tree Facility and the resulting risk to public health and the environment; monitored the Water Division's Permit renewal process for the Lone Tree Facility because the Permit was administratively extended in December 2017; and engaged with consultants to prepare for the permit-renewal administrative process.  Swift Beef's violations of its Permit and the CWA impair Plaintiffs' ability to accomplish their missions and have caused them to alter their activities.

11.     An injunction order requiring Swift Beef to comply fully with the CWA and all terms of the Permit would redress Plaintiffs' and their members' injuries.  Injunctive relief that addresses Swift Beef's operational decisions and technological problems can curb or eliminate future pollution that is rooted in processing and production levels at the Beef Plant and found in effluent discharges from the Lone Tree Facility.  Declaratory relief and civil penalties, if awarded, would deter future CWA violations by Swift Beef at the Lone Tree Facility.

12.     Defendant Swift Beef Company is the owner of the Lone Tree Facility.  Swift Beef Company is the operator of the Lone Tree Facility.  Swift Beef Company is the CWA

permittee at the Lone Tree Facility.  Swift Beef Company is also known as and referred to as

JBS Swift Beef Company.  Swift Beef Company is a Delaware Corporation doing business in

Colorado.  Swift Beef Company has engaged in the activities that have resulted in violations of

the Permit and the CWA.  Swift Beef Company's business office address is 1770 Promontory

Circle, Greeley, Colorado 80634.  Swift Beef Company is a corporation.  Swift Beef Company is

a "person" within the meaning of 33 U.S.C. § 1362(5).  Swift Beef Company's registered agent

is the Corporation Services Company, located at 1900 W. Littleton Blvd., Littleton, Colorado

80120.  Swift Beef Company is a wholly owned subsidiary of JBS USA and JBS S.A.  JBS S.A.

is a Brazilian company that is the world's largest producer of beef, chicken, and pork.

13.     Swift Beef Company also owns and operates a cattle slaughterhouse and meat and

hide processing plant (the Beef Plant") located in Greeley, Colorado.  The Beef Plant's address is

800 North 8th Avenue, Greeley, Colorado 80632.  Swift Beef Company sends the Beef Plant's

wastewater to the Lone Tree Facility.

14.     JBS USA maintains JBS S.A.'s U.S. headquarters in Greeley, Colorado.  JBS

USA address is 1770 Promontory Circle, Greeley, Colorado 80634.  In 2017, JBS USA had over

$50 billion in U.S. sales, with $27.8 billion in revenue.  JBS USA oversees and controls

operations at the Lone Tree Facility.  JBS USA oversees and controls operations at Beef Plant.

## LEGAL AND FACTUAL BACKGROUND

### I.     CLEAN WATER ACT

15.     Congress enacted the CWA "to restore and maintain the chemical, physical and

biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  The CWA prohibits the

discharge of any pollutant from a point source into navigable waters, unless the discharge is

authorized by and complies with a CWA permit. 33 U.S.C. §§ 1311(a), 1342.

16.     The CWA is implemented in part through its National Pollutant Discharge Elimination System (NPDES) permit program. 33 U.S.C. § 1342.  NPDES permits, which are issued by EPA, impose effluent limitations and standards designed to protect water quality on the discharger.  EPA may delegate this program to the states, *id*. § 1342(b) and 40 C.F.R. § 123.61, which it did for Colorado in 1975. *See* https://www.epa.gov/npdes/npdes-state-program-information (showing Colorado was authorized to administer NPDES permitting program on March 27, 1975). *See* Colo. Rev. Stat. Ann. § 25-8-202(6)-(7).  The Colorado Department, through its Water Division, is the state agency authorized to issue permits and enforce Colorado's NPDES permitting program, which is known as the Colorado Discharge Permit System.

17.     The CWA authorizes citizens to commence enforcement actions against any person "who is alleged to be in violation" of "an effluent standard or limitation." 33 U.S.C. § 1365(a).  An "effluent standard or limitation" includes permit terms, conditions, limits and requirements. *Id*. § 1365(f)(6).  Discharges that violate an NPDES permit also violate the CWA. 40 C.F.R. § 122.41(a).

18.     In a citizen suit brought under Section 505(a) of the CWA, 33 U.S.C. § 1319(a), the district court has jurisdiction to order a defendant to comply with the CWA and to assess civil penalties against a defendant under Section 309(d) of the CWA, 33 U.S.C. § 1365(d). Section 309(d) of the CWA provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation. 33 U.S.C. § 1319(d).  Under the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt

Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a CWA civil

penalty of up to $37,500 per day for each violation that occurred after December 6, 2013, and up

to $54,833 per day for each violation that occurred after November 2, 2015 where penalties are

assessed on or after January 15, 2019. 40 C.F.R. § 19.4; 84 Fed. Reg. 2056, 2059 (Feb. 6, 2019).

And under Section 505(d) of the CWA, the court "may award costs of litigation (including

reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party,

whenever the court determines such an award is appropriate." 33 U.S.C § 1365(d).

## II.    LONE TREE WASTEWATER TREATMENT FACILITY

19.    The Lone Tree Facility is located at 24750 Weld County Road 62 ½ in Greeley,

Colorado, which is several miles east of downtown Greeley.  Lone Tree Creek flows perennially

through the Facility.  Its confluence with the South Platte River is approximately one mile south

of the Facility site.  Lone Tree Creek is a tributary of the South Platte River.  Lone Tree Creek

and the South Platte River are waters of the United States within the meaning of 33 U.S.C. §

1362(7).  The South Platte River, upstream and downstream of its confluence with Lone Tree

Creek, provides habitat for fish, birds, and upland wildlife.

20.    Swift Beef purchased the Lone Tree Facility in 2007.  At the same time, Swift

Beef purchased related facilities in and around Greeley, including a feedlot and two

slaughterhouses.

21.    Swift Beef owns and operates a cattle slaughterhouse and meat and hide

processing plant—the Beef Plant—in Greeley, Colorado.  At the Beef Plant, Swift Beef kills

between 3000 and 6000 animals per day.  Slaughtering animals at the Beef Plant generates an

animal wastewater stream that includes animal fat, meat, blood, *e. coli*, ammonia, and excrement.

Swift Beef creates an additional waste stream at the Beef Plant by processing and preserving

animal hides.  Hide processing involves using sodium chloride to extract water from the hides so they may be preserved and transported offsite.  Swift Beef sends both Beef Plant waste streams to the Lone Tree Facility through a six-mile pipeline for treatment and disposal.

22.     Next door to the Beef Plant is a lamb slaughterhouse.  Swift Beef previously owned the lamb slaughterhouse, but sold it in 2016 to Mountain States Rosen.  The lamb plant processes 2,500 animals a day.  Its wastewater is combined with the Beef Plant's wastewater before being piped to the Lone Tree Facility for treatment and disposal.

23.     The Lone Tree Facility only receives wastewater from the two slaughterhouses. The Lone Tree Facility accepts approximately 3-4 millions gallons of wastewater per day from the two slaughterhouses via the pipeline.  The wastewater is treated at the Facility through two side-by-side, identical multi-step processes.  First, influent wastewater from the slaughterhouses flows into two anaerobic lagoons.  Then, it is pumped into a secondary biological nutrient-activated sludge system consisting of two anoxic basins and two aerobic basins.  The next step in the treatment process sends the wastewater into final clarifiers.  And last, the wastewater either undergoes chlorination and dechlorination, or, alternatively, it is pumped directly into two holding ponds.  The wastewater is usually stored for approximately 30 days in these large ponds before being discharged into Lone Tree Creek.

24.     The effluent discharges from the Lone Tree Facility occur pursuant to a Colorado Pollution Discharge Elimination System permit issued by the Water Division.  The Water Division issued Swift Beef the current version of the Permit on October 9, 2012 and it went into effect on December 1, 2012.  The Permit expired on November 30, 2017, but remains effective today because the Water Division administratively extended it indefinitely on December 1, 2017.

25.     The Permit authorizes Swift Beef to discharge effluent from the Lone Tree

Facility to Lone Tree Creek from one pipe, known as the Outfall.  The Permit establishes

pollution limits for multiple parameters.  The Permit's limits vary for some parameters

depending on the number of animals slaughtered at the Beef Plant in a particular month.  This

production variability is reflected in the Permit as Outfall 001, Outfall 002, and Outfall 003.

Two days before the beginning of each month, Swift Beef must report to the Water Division the

number of animals that will be slaughtered at the Beef Plant so that the Water Division knows

which of the Permit's limits and conditions apply for the forthcoming month.

26.     The Permit requires Swift Beef to sample effluent discharges to determine

compliance with Permit limits.  The Permit prescribes sampling rules and frequency.  For

example, the discharge limits applicable for total ammonia and total suspended solids include

both a daily maximum limit and a 30-day average limit.  The Permit mandates that Swift Beef

report sampling results in Discharge Monitoring Reports, which are submitted to the Water

Division and EPA each month.  Discharge Monitoring Reports are supposed to be available for

the public to review.

27.     Before renewing the Permit in 2012, the Water Division identified chronic

ammonia violations at the Lone Tree Facility.  The Water Division conducted a site visit of the

Lone Tree Facility in August 2012 after multiple "upsets" led to significant ammonia-related

violations.  The Water Division believed the problem stemmed from cleaning products used at

the two slaughterhouses and production levels at the Beef Plant.

28.     The Permit attempts to address the ammonia problem in three ways.  First, the

Permit includes a five-year schedule for implementing an Ammonia Reduction Project.  Second,

the Water Division imposed a concentration-based effluent limitation, which provides a more

stringent standard for ammonia than the prior permit's requirements.  Due to the change, Swift

Beef was not required to achieve compliance with the Permit's new 30-day average ammonia limits until October 1, 2017.  And last, the Permit now includes "chronic," as opposed to lethal, Whole Effluent Toxicity testing and limits to evaluate the sublethal effects of the Lone Tree Facility's effluent.

29.     Since Permit issuance, Swift Beef has violated the Permit's limits for total ammonia/nitrogen as well as total suspended solids.  Swift Beef exceeded the daily maximum concentration of total ammonia in April 2018, June 2018 and September 2018.  Swift Beef exceeded the 30-day average concentration for total ammonia in June 2018 and September 2018. Swift Beef exceeded the daily maximum amount of total suspended solids in January 2016, June 2018, July 2018, and September 2018.  Swift Beef exceeded the 30-day average for total suspended solids in July 2018.

30.     Whole Effluent Toxicity—or WET—testing is designed to ensure the discharged effluent is not unacceptably toxic to aquatic life.  WET tests measure the synergistic toxic effect of multiple pollutants that may individually be less toxic.  WET testing measures a test organism's response to effluent: lethal, chronic (defined as impairing growth or reproduction) or no observed effect.  The WET tests required by the Permit evaluate the effluent's effect, at different concentrations, on a water flea (*ceriodaphnia dubia*) and a fathead minnow (*pimephales promelas*).

31.     The Permit requires Swift Beef to conduct two types of WET testing.  One test is known as the 25-percent seven-day inhibition concentration (or IC25) standard.  IC25 identifies the effluent concentration at which no more than 25 percent of the test organisms experience reproduction or growth inhibition after seven days of exposure.  For this test, the Permit requires the use of 100 percent effluent—meaning the effluent is not diluted—to reflect Lone Tree

Creek's low flows.  The second test is known as NOEC, or "no observed effects concentration," and determines the highest concentration of discharged effluent that shows no statistically detectable effect on the aquatic organism.  The Permit requires that there are no observed effects when exposing the aquatic organisms to 100 percent, pure effluent concentrations.  The Permit requires Swift Beef to perform these WET tests and demonstrate compliance with the WET testing limits quarterly.

32.     According to the Permit, Swift Beef had to conduct WET testing and report results to the Water Division beginning in the fourth quarter of 2012 through the third quarter of 2013.  The Permit began requiring compliance with WET testing limits in the fourth quarter of 2013.

33.     Swift Beef reported violations of the Permit's WET testing limits immediately.  In 2013, Swift Beef investigated the cause of these violations.  First, Swift Beef performed a Toxicity Reduction Evaluation (TRE) analysis that began on August 18, 2013 and was completed n September 1, 2013.  The TRE assessed the waters in Lone Tree Creek and determined how much sodium chloride could be dumped into the Creek before there would be WET violations.  The TRE did not evaluate effluent discharged from the Lone Tree Facility.  In October 2013, Swift Beef conducted another "accelerated" test.  For this test, Swift Beef segregated the wastewater coming from hide processing at the Beef Plant and stored those wastes in the Lone Tree Facility's holding ponds that are not always used for treatment.  Swift Beef then conducted three WET tests on the effluent absent the hide wastewater, resulting in two passes and one failure.  After conducting these evaluations, Swift Beef represented to the Water Division that the use of salts (sodium chloride) for hide processing was the cause of repeated WET violations at the Facility.

34.     In 2014, the Water Division and Swift Beef discussed the WET violations.  In October 2014, Water Division and Swift Beef agreed on a schedule for fixing the WET-testing problem.  Swift Beef would develop and install at the Beef Plant a salt evaporation system for recovering and reusing the salts, which would reduce the volume of brine wastewater pumped to the Lone Tree Facility for discharge.  The chosen salt evaporation system processes 25,000 gallons of brine wastewater each day.  The agreed-upon schedule provided that Swift Beef would have the salt evaporation system operational by December 2015 and that Swift Beef would fully comply with the Permit's WET testing limits by December 2015.  From the fourth quarter of 2013 through the end of 2015, Swift Beef violated the WET limits during every quarterly testing and reporting period.

35.     Swift Beef purchased and installed the salt evaporator at its Beef Plant in 2015.  Swift Beef's salt evaporation system was not operational at the end of 2015.  Despite not meeting the deadline agreed upon with the Water Division, Swift Beef continued to send the brine wastewater from its Beef Plant to the Lone Tree Facility in 2016, 2017, and 2018.  In every quarter from 2016 through 2018, Swift Beef violated the Permit's WET limits.  Upon information and belief, Swift Beef is likely to continue to violate WET testing limits at the Lone Tree Facility.

36.     Swift Beef's salt evaporator involves a combustion process that emits air pollution, including particulate matter, carbon monoxide, volatile organic compounds, and nitrogen oxide.  Because of these emissions, Swift Beef had to comply with air pollution laws.  In February 2015, Swift Beef submitted an Air Pollutant Emission Notice for the salt evaporator to the State's Air Pollution Control Division.  The filing of an Air Pollutant Emission Notice is a state law requirement that applies when an emission unit at a facility emits two or more tons per

year of particulate matter, carbon monoxide, volatile organic compounds, or nitrogen oxide.

Concurrently, Swift Beef applied for a modified air construction permit for its Beef Plant

because of the salt evaporator's projected emissions in addition to other emissions at the Beef

Plant triggered this air permitting requirement. That air permit was issued in 2015.

37.     Swift Beef purchased and installed a "scrubber" for the salt evaporator. The

purpose of the scrubber was to reduce air emissions. If emissions from the salt evaporator

exceed a certain tonnage-per-year threshold, Swift Beef would need to apply for a "major

source" air permit. After initially using smaller-scale scrubbers on the salt evaporator, Swift

Beef installed a full-scale scrubber and was able to operate it in December 2017.

38.     Swift Beef violated the Permit's WET testing limits in each quarter of 2018.

39.     In July 2018, Swift Beef submitted a modified Air Pollutant Emission Notice and

a modified construction permit application to the state. The modified notice and permit

application were necessary because of additional and unexpected emissions of particulate matter

from operating the salt evaporator. A modified air permit covering the particulate matter emitted

from the salt evaporator has not been issued.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Violations of the Clean Water Act and Permit—Exceeding Whole Effluent Toxicity Limits)

40.     Each and every allegation contained in the preceding paragraphs of this

Complaint is incorporated herein by reference as if fully set forth herein.

41.     In every quarter from January 2014 through December 2018, Swift Beef violated

WET testing limits in its CWA Permit at the Lone Tree Facility.

42.     In the first quarter of 2014, Swift Beef released effluent from the Lone Tree

Facility that required a 40 percent concentration for satisfying the NOEC WET test and 55.08

percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

43.     In the second quarter of 2014, Swift Beef released effluent from the Lone Tree Facility that required a 60 percent concentration for satisfying the NOEC WET test and 65.28 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

44.     In the third quarter of 2014, Swift Beef released effluent from the Lone Tree Facility that required a 60 percent concentration for satisfying the NOEC WET test and 80.67 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

45.     In the fourth quarter of 2014, Swift Beef released effluent from the Lone Tree Facility that required a 60 percent concentration for satisfying the NOEC WET test and 72.09 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

46.     In the first quarter of 2015, Swift Beef released effluent from the Lone Tree Facility that required a 60 percent concentration for satisfying the NOEC WET test and 65.75 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

47.     In the second quarter of 2015, Swift Beef released effluent from the Lone Tree Facility that required an 80 percent concentration for satisfying the NOEC WET test and 95.97 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

48.     In the third quarter of 2015, Swift Beef released effluent from the Lone Tree

Facility that required an 80 percent concentration for satisfying the NOEC WET test and 90.74 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

49.     In the fourth quarter of 2015, Swift Beef released effluent from the Lone Tree Facility that required an 80 percent concentration for satisfying the NOEC WET test and 94.02 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

50.     In the first quarter of 2016, Swift Beef released effluent from the Lone Tree Facility that required an 80 percent concentration for satisfying the NOEC WET test and 79.45 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

51.     In the second quarter of 2016, Swift Beef released effluent from the Lone Tree Facility that required an 80 percent concentration for satisfying the NOEC WET test and 86.00 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

52.     In the third quarter of 2016, Swift Beef released effluent from the Lone Tree Facility that required an 80 percent concentration for satisfying the NOEC WET test and 86.46 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

53.     In the fourth quarter of 2016, Swift Beef released effluent from the Lone Tree Facility that required a 60 percent concentration for satisfying the NOEC WET test and 67.43 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

54.     In the first quarter of 2017, Swift Beef released effluent from the Lone Tree Facility that required an 80 percent concentration for satisfying the NOEC WET test and 79.38 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

55.     In the second quarter of 2017, Swift Beef released effluent from the Lone Tree Facility that required a 60 percent concentration for satisfying the NOEC WET test and 69.40 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

56.     In the third quarter of 2017, Swift Beef released effluent from the Lone Tree Facility that required a 60 percent concentration for satisfying the NOEC WET test and 64.92 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

57.     In the fourth quarter of 2017, Swift Beef released effluent from the Lone Tree Facility that required an 80 percent concentration for satisfying the NOEC WET test and 84.75 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

58.     In the first quarter of 2018, Swift Beef released effluent from the Lone Tree Facility that required an 80 percent concentration for satisfying the NOEC WET test and 84.26 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

59.     In the second quarter of 2018, Swift Beef released effluent from the Lone Tree Facility that required a 60 percent concentration for satisfying the NOEC WET test and 96.11 concentration (*Pimephales promelas*) percent and 75.37 percent concentration (*Ceriodaphnia*

*dubia*) for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

60.     In the third quarter of 2018, Swift Beef released effluent from the Lone Tree Facility that required an 80 percent concentration for satisfying the NOEC WET test and 27.55 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

61.     In the fourth quarter of 2018, Swift Beef released effluent from the Lone Tree Facility that required a 60 percent concentration for satisfying the NOEC WET test and 69.03 percent concentration for the IC25 WET test.  These concentrations were below and violated the 100 percent instream-waste-concentration requirement in the Lone Tree Facility Permit.

62.      Accordingly, for five continuous years, Swift Beef has been violating the CWA and its Permit's WET testing limits and, upon information and belief, will continue to do so absent judicial relief.  This is an ongoing and continuing violation of the CWA and Permit and enforceable through the CWA's citizen suit provision. *See* 33 U.S.C. § 1365(a)(1), § 1365(f)(6).

63.     Each day that Swift Beef has not complied with the WET testing limits is a separate and distinct violation of the CWA and the Permit.  Pursuant to §§ 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, Swift Beef is liable for civil penalties for its violations of the Permit.  Swift Beef is subject to an injunction under the CWA ordering it to take all actions necessary to cease its WET testing Permit violations.

## SECOND CLAIM FOR RELIEF
(Violations of the Clean Water Act and Permit—Failure to comply with Automatic Compliance Response Requirement due to violations of Whole Effluent Toxicity limits)

64.     Each and every allegation contained in the preceding paragraphs of this Complaint is incorporated herein by reference as if fully set forth herein.

65.     When there are violations of Whole Effluent Toxicity testing limits at the Lone

Tree Facility, Part I(B)(3)(c) of the Permit requires Swift Beef to conduct an Automatic

Compliance Response: either accelerated testing using the more sensitive species or,

alternatively, conduct a Toxicity Identification Evaluation or a Toxicity Reduction Evaluation.

66.     As detailed and alleged above, Swift Beef violated Whole Effluent Toxicity

testing limits in every quarter from the first quarter of 2014 through the fourth quarter of 2018.

Swift Beef did not conduct the Automatic Compliance Response required by the Permit for the

first through fourth quarters of 2014, for the first through fourth quarters of 2015, and for the

first and second quarters in 2016.  Swift Beef sought a waiver from conducting the Automatic

Compliance Response requirement for each of these ten quarters, and the Water Division

approved and issued a waiver.

67.     In the third quarter of 2016, Swift Beef violated Whole Effluent Toxicity limits in

the Permit.  Swift Beef did not conduct the Automatic Compliance Response required by the

Permit for the third quarter of 2016.  Swift Beef therefore violated Part I(B)(3)(c) of the Permit.

68.     In the fourth quarter of 2016, Swift Beef violated Whole Effluent Toxicity limits

in the Permit.  Swift Beef did not conduct the Automatic Compliance Response required by the

Permit for the fourth quarter of 2016.  Swift Beef therefore violated Part I(B)(3)(c) of the Permit.

69.     In the first quarter of 2017, Swift Beef violated Whole Effluent Toxicity limits in

the Permit.  Swift Beef did not conduct the Automatic Compliance Response required by the

Permit for the first quarter of 2017.  Swift Beef therefore violated Part I(B)(3)(c) of the Permit.

70.     In the second quarter of 2017, Swift Beef violated Whole Effluent Toxicity limits

in the Permit.  Swift Beef did not conduct the Automatic Compliance Response required by the

Permit for the second quarter of 2017.  Swift Beef therefore violated Part I(B)(3)(c) of the

Permit.

71.     In the third quarter of 2017, Swift Beef violated Whole Effluent Toxicity limits in the Permit.  Swift Beef did not conduct the Automatic Compliance Response required by the Permit for the third quarter of 2017.  Swift Beef therefore violated Part I(B)(3)(c) of the Permit.

72.     In the fourth quarter of 2017, Swift Beef violated Whole Effluent Toxicity limits in the Permit.  Swift Beef did not conduct the Automatic Compliance Response required by the Permit for the fourth quarter of 2017.  Swift Beef therefore violated Part I(B)(3)(c) of the Permit.

73.     In the first quarter of 2018, Swift Beef violated Whole Effluent Toxicity limits in the Permit.  Swift Beef did not conduct the Automatic Compliance Response required by the Permit for the first quarter of 2018.  Swift Beef therefore violated Part I(B)(3)(c) of the Permit.

74.     In the second quarter of 2018, Swift Beef Beef violated Whole Effluent Toxicity limits in the Permit.  Swift Beef did not conduct the Automatic Compliance Response required by the Permit for the second quarter of 2018.  Swift Beef therefore violated Part I(B)(3)(c) of the Permit.

75.     In the third quarter of 2018, Swift Beef violated Whole Effluent Toxicity limits in the Permit.  Swift Beef did not conduct the Automatic Compliance Response required by the Permit for the third quarter of 2018.  Swift Beef therefore violated Part I(B)(3)(c) of the Permit.

76.     In the fourth quarter of 2018, Swift Beef violated Whole Effluent Toxicity limits in the Permit.  Swift Beef did not conduct the Automatic Compliance Response required by the Permit for the fourth quarter of 2018.  Swift Beef therefore violated Part I(B)(3)(c) of the Permit.

77.     Swift Beef has not conducted an Automatic Compliance Response from the third quarter of 2016 through the fourth quarter of 2018 and did not receive a waiver for these quarters.  This is an ongoing and continuing violation of Part I(B)(3)(c) of the Permit and enforceable through the CWA's citizen suit provision. *See* 33 U.S.C. § 1365(a)(1), § 1365(f)(6).

Each day that Swift Beef does not perform the additional testing is a separate and distinct violation of the CWA and the Permit, and subjects Swift Beef to civil penalties and injunctive relief.

### THIRD CLAIM FOR RELIEF
(Violations of the Clean Water Act and Permit—Noncompliance with Requirement for Submitting Supporting Documents for Whole Effluent Toxicity Testing Results)

78.     Each and every allegation contained in the preceding paragraphs of this Complaint is incorporated herein by reference as if fully set forth herein.

79.     Along with the Discharge Monitoring Reports that detail Whole Effluent Toxicity testing results, the Permit in Part I(B)(3)(a) requires Swift Beef to provide the Water Division with laboratory statistical summary sheets, summaries of the determination of a valid, invalid or inconclusive test, and copies of any chain of custody forms.  These documents then become publicly available.  Since the Permit became effective on December 1, 2012 and began requiring Swift Beef to comply with Whole Effluent Toxicity testing limits on October 1, 2013, Swift Beef has repeatedly violated the Permit's requirement to provide detailed information about Whole Effluent Toxicity testing at the Lone Tree Facility.

80.     For the first quarter of 2014, Swift Beef did not provide the Water Division with laboratory statistical summary sheets, summaries of the determination of a valid, invalid or inconclusive test, and copies of any chain of custody forms.

81.     For the second quarter of 2014, Swift Beef did not provide the Water Division with laboratory statistical summary sheets, summaries of the determination of a valid, invalid or inconclusive test, and copies of any chain of custody forms.

82.     For the third quarter of 2014, Swift Beef did not provide the Water Division with laboratory statistical summary sheets, summaries of the determination of a valid, invalid or inconclusive test, and copies of any chain of custody forms.

83.     For the fourth quarter of 2014, Swift Beef did not provide the Water Division with laboratory statistical summary sheets, summaries of the determination of a valid, invalid or inconclusive test, and copies of any chain of custody forms.

84.     For the fourth quarter of 2016, Swift Beef did not provide the Water Division with laboratory statistical summary sheets, summaries of the determination of a valid, invalid or inconclusive test, and copies of any chain of custody forms.

85.     For the first quarter of 2017, Swift Beef did not provide the Water Division with laboratory statistical summary sheets, summaries of the determination of a valid, invalid or inconclusive test, and copies of any chain of custody forms.

86.     For the third quarter of 2017, Swift Beef did not provide the Water Division with laboratory statistical summary sheets, summaries of the determination of a valid, invalid or inconclusive test, and copies of any chain of custody forms.

87.     For the first quarter of 2018, Swift Beef did not provide the Water Division with laboratory statistical summary sheets, summaries of the determination of a valid, invalid or inconclusive test, and copies of any chain of custody forms.

88.     For the third quarter of 2018, Swift Beef did not provide the Water Division with laboratory statistical summary sheets, summaries of the determination of a valid, invalid or inconclusive test, and copies of any chain of custody forms.

89.     For the fourth quarter of 2018, Swift Beef did not provide the Water Division with laboratory statistical summary sheets, summaries of the determination of a valid, invalid or inconclusive test, and copies of any chain of custody forms.

90.     For the quarters identified above, Swift Beef has not subsequently provided the Water Division with laboratory statistical summary sheets, summaries of the determination of a

valid, invalid or inconclusive test, and copies of any chain of custody forms.

91.     For the quarters identified above, Swift Beef's violation of the Permit, Part I(B)(3)(a), is an ongoing and continuing violation of the CWA and enforceable through the CWA's citizen suit provision. *See* 33 U.S.C. § 1365(a)(1), § 1365(f)(6).  Each day that Swift Beef does not submit with laboratory statistical summary sheets, summaries of the determination of a valid, invalid or inconclusive test, and copies of any chain of custody forms is a separate and distinct violation of the CWA and the Permit, and subjects Swift Beef to civil penalties and injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

1.     Declare that Swift Beef has violated and is violating the Clean Water Act and the Permit applicable to the Lone Tree Facility;

2.     Issue an injunction prohibiting Swift Beef from violating the Permit's terms and limitations at the Lone Tree Facility and the Clean Water Act in the future, and requiring Swift Beef to take all necessary measures to prevent any future violations of its Permit terms and limitations and the CWA;

3.     Determine the number of days of violation committed by Swift Beef and assess civil penalties against Swift Beef as authorized by the Clean Water Act, 33 U.S.C. § 1319(d),; 40 C.F.R. § 19.4; 84 Fed. Reg. 2056, 2059 (Feb. 6, 2019);

4.     Order Swift Beef to pay Plaintiffs' litigation costs, including reasonable attorneys' fees and expert witness fees, 33 U.S.C. § 1365; and

5.     Provide such other relief as the court deems just and proper.

Respectfully submitted,


Dated: May 23, 2019

*/s/ Neil Levine*
Neil Levine (CO Bar No. 29083)
Public Justice
4404 Alcott Street
Denver, Colorado 80211
(303)-455-0604
nlevine@publicjustice.net

Attorneys for Plaintiffs
*Center for Biological Diversity and Food &
Water Watch*

Hannah Connor
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, Florida 33731
(202) 681-1676
hconnor@biologicaldiversity.org

Attorney for Plaintiff
*Center for Biological Diversity*

Tarah Heinzen
Food & Water Watch
2009 NE Alberta St. Ste. 207
Portland, OR 97211
(202) 683-2457
theinzen@fwwatch.org

Attorney for Plaintiff
*Food & Water Watch*


Plaintiffs:

Center for Biological Diversity
1536 Wynkoop St., Ste. 421
Denver, Colorado 80202

Food & Water Watch
1801 N. Williams St., Ste. 400
Denver, Colorado 80218