**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-01464-NYW

CENTER FOR BIOLOGICAL DIVERSITY and
FOOD & WATER WATCH,

    Plaintiffs,

v.

SWIFT BEEF COMPANY,

    Defendant.

**CONSENT JUDGMENT**

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Judgment is hereby entered.

PURSUANT to and in accordance with the Consent Decree [#80] entered by the Honorable Nina Y. Wang on March 16, 2021, incorporated herein by reference, it is

ORDERED, ADJUDGED, AND DECREED as follows:

### I.    BACKGROUND

    A.    Plaintiffs Center for Biological Diversity and Food & Water Watch brought this action against Defendant Swift Beef Company alleging certain violations of the Federal Water Pollution Control Act, otherwise known as the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act"), arising from Defendant's operations of the Lone Tree Wastewater Treatment Facility in Greeley, Colorado;

    B.    Plaintiff Center for Biological Diversity ("Center") is a non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the preservation of biodiversity, native species, and ecosystems;

    C.    Plaintiff Food & Water Watch ("FWW") is a non-profit, public benefit

corporation organized under the laws of the District of Columbia that mobilizes people to build political power to move bold solutions to the most pressing food, water, and climate problems of our time. FWW uses grassroots organizing, policy advocacy, research, communications, and litigation to protect people's health, communities, and democracy;

D. Swift Beef Company ("Swift Beef" or "Defendant") is a corporation organized and existing under the laws of the State of Delaware and authorized to conduct business in the State of Colorado;

E. At all times relevant here, Swift Beef has owned and operated a beef processing plant ("Beef Plant") located at 800 North 8th Avenue, Greeley, Colorado 80632;

F. Swift Beef currently owns a former lamb processing plant ("Lamb Plant") located at 920 North 7th Avenue, Greeley, Colorado 80631;

G. At all times relevant here, Swift Beef has owned and operated the Lone Tree Wastewater Treatment Facility ("Facility") located at located at 24750 Weld County Road 62 ½, Greeley, Colorado 80631;

H. On October 9, 2012, the Colorado Department of Public Health and Environment ("CDPHE") issued Swift Beef a discharge permit, Permit No. CO-0027707 ("Water Permit"), pursuant to the Colorado Water Quality Control Act, C.R.S. 25-8-101 *et seq*, under the authority vested to the State under the Clean Water Act, 33 U.S.C. § 1342 *et seq*. The Water Permit authorizes Swift Beef to discharge treated Facility wastewater, originating from the Beef Plant and Lamb Plant, to Lone Tree Creek, a tributary of the South Platte River, subject to the specific effluent limitations and other conditions;

I. CDPHE administratively extended the Water Permit, which was set to expire five years after issuance, on December 1, 2017;

- 2 -

J. The Water Permit includes, among other things, effluent limitations on Whole Effluent Toxicity ("WET") and ammonia;

K. On January 31, 2019, Plaintiffs issued a notice of intent to sue letter to Swift Beef (the "CWA NOI") for alleged violations of the CWA [#80 at 21–37 (Ex. A)]. The CWA NOI includes Plaintiffs' allegations that Swift Beef violated certain conditions relating to WET standards, ammonia limits, and associated compliance response and monitoring requirements as contained in the Water Permit. The letter was concurrently served on the Administrator of the U.S. Environmental Protection Agency, ("U.S. EPA"), the Regional Administrator of the U.S. EPA for Region 8, and the Attorney General of the United States;

L. On May 23, 2019, Plaintiffs initiated the above-captioned action against Swift Beef, alleging violations of the CWA, as identified in the CWA NOI letter, and seeking declaratory and injunctive relief, the imposition of civil penalties, and Plaintiffs' litigation costs, including attorneys' fees and costs ("Complaint");

M. Plaintiffs served the Complaint in this matter upon Swift Beef, the Administrator of the U.S. EPA, the Regional Administrator of the U.S. EPA for Region 8, and the Attorney General of the United States as required under 40 C.F.R. § 135.4;

N. On July 24, 2020, the Center and FWW issued a supplemental notice of intent to sue letter to Swift Beef (the "Supplemental CWA NOI"), alleging violations of WET and ammonia limits that post-dated the Complaint [#80 at 38–43 (Ex. B)]. Plaintiff served the same concurrently on the Administrator of the U.S. EPA, the Regional Administrator of the U.S. EPA for Region 8, and the Attorney General of the United States;

O. On August 6, 2020, CDPHE's Water Quality Control Division issued Swift Beef a Notice of Violation and Cease and Desist Order due to alleged 2020 WET and ammonia violations, [#80 at 44–53 (Ex. C)], as identified in Plaintiffs' July 24, 2020 Supplemental CWA

NOI. Among other things, CDPHE's Notice of Violation and Cease and Desist Order required Swift Beef to retain a third-party consultant experienced in industrial wastewater treatment and management;

P.   In accordance with CDPHE's Notice of Violation and Cease and Desist Order, Swift Beef retained the services of Woodard & Curran. Woodard & Curran evaluated the Lone Tree Facility for the purpose of identifying ways to improve the Facility and ensuring future and long-term compliance with the terms and conditions of the Water Permit. On November 4, 2020, Woodard & Curran issued a report that identifies several corrective measures, including for upgrades to instrumentation and process controls at the Facility. The November 4, 2020 report is incorporated into the Consent Decree and attached as Exhibit D thereto [#80 at 54–73];

Q.   On July, 20, 2015, CDPHE issued Swift Beef an air permit, Permit No. 95WE757 ("Air Permit"), pursuant to the Clean Air Act and the Colorado Air Pollution Prevention and Control Act, C.R.S. § 25-7-101 *et seq.* and under the authority vested to the State under the Clean Air Act's State Implementation Program, 42 U.S.C. § 7410 *et seq.*, which governs air emissions from the Plant and its various points of emission, including emissions from the salt recovery system (Emission Point 20), subject to specific limitations and other conditions;

R.   On July 23, 2018, Swift Beef applied for a modification to its Air Permit with CDPHE to include a wet scrubber for its salt recovery system (Emission Point 20). Among other things, Swift Beef's application states that the wet scrubber's "operation began on" date for the purposes of Swift Beef's application was February 12, 2018;

S.   On October 1, 2019, Plaintiff issued a notice of intent to sue letter to Swift Beef (the "CAA NOI") for alleged violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq.* and served same on the Administrator of the U.S. EPA, the Regional Administrator of the U.S. EPA for Region 8, and the Attorney General of the United States [#80 at 74–85 (Ex. E)];

T.  The CAA NOI alleged that Swift Beef violated certain conditions of its Air Permit relating to Swift Beef's operation of a salt evaporator system at its Beef Plant (Emission Point 20), triggered by the date the wet scrubber began operating pursuant to the Air Permit application (as referenced in paragraph R above), including for failing to give notice of startup, failure to conduct initial compliance testing, failure to provide an operating and maintenance plan, failure to provide certain specifications of the salt evaporator, failure to properly self- certify the salt evaporator, failure to properly provide fuel consumption limits for the salt evaporator, and failure to certify compliance with emission limits for criteria pollutants released from the salt evaporator;

U.  On October 29, 2019, CDPHE's Air Quality Control Division issued Swift Beef a Compliance Advisory based on some of the same alleged violations Plaintiffs alleged in their CAA NOI. On March 26, 2020, CDPHE and Swift Beef entered into a Compliance Order on Consent to resolve the violations identified in the October 29, 2019 Compliance Advisory;

V.  On August 27, 2020, Swift Beef retained the Ramboll Engineering Company to investigate the salt evaporator system utilized at the Beef Plant and evaluate the cause of visible air emissions that at times can exceed allowable opacity limitations and identify a pathway to a solution ("Ramboll Proposal") [#80 at 86–92 (Ex. F)].

W.  On January 20, 2021, Plaintiffs filed a Supplemental Complaint alleging that Swift Beef violated the ammonia limits and WET test limits of its Water Permit, and certain conditions of its Air Permit identified in Plaintiffs CAA NOI ("Supplemental Complaint");

X.  Plaintiffs served the Supplemental Complaint in this matter upon Swift Beef, the Administrator of the U.S. Environmental Protection Agency, ("U.S. EPA") the Regional Administrator of the U.S. EPA for Region 8, and the Attorney General of the United States as required under 40 C.F.R. § 135.4;

Y.  Swift Beef denies the allegations in the Complaint, Supplemental Complaint and

violations identified in the CWA NOI, Supplemental CWA NOI and CAA NOI, and alleges that it was in compliance with its Water Permit at the time of the filing of the Complaint and Supplemental Complaint, and has implemented measures both voluntarily and in compliance with regulatory requirements and further agrees to take the actions listed therein under Section III (Requirements) to help ensure compliance with its Air Permit and Water Permit;

      Z.      Plaintiffs and Swift Beef (collectively the "Parties") have negotiated the Consent Decree in good faith and at arm's length, and agree that the settlement of the above-captioned action through the Consent Decree without further litigation is in the public interest and is a fair, reasonable, and appropriate means of resolving all claims in this action. Nothing therein shall constitute an admission of liability.

## II.    JURISDICTION AND VENUE

      1.      This Court has jurisdiction over the subject matter of this action and the Parties pursuant to 28 U.S.C. § 1331 and the citizen suit provisions of the Clean Water Act, 33 U.S.C. § 1365(a) and Clean Air Act, 42 U.S.C. § 7604(a)(1). Venue lies in this District pursuant to 33 U.S.C. § 1365(c)(1) and 42 U.S.C. § 7604(a)(1) because the violations in the Supplemental Complaint are alleged to have occurred in this judicial district. For purposes of the Consent Decree, or any action to enforce the Consent Decree, Swift Beef consents to the court's jurisdiction and venue in this judicial district.

## III. APPLICABILITY

      2.      The Consent Decree shall inure to the benefit of, and be binding upon, the Parties and their successors, assigns, officials, agents, representatives, and staff. Changes in the organizational form or status of a party shall have no effect on the binding nature of the Consent Decree or its applicability.

      3.      The Consent Decree constitutes the final, complete, and exclusive agreement and

understanding among the Parties with respect to the settlement embodied in the Consent Decree, and supersedes all prior agreements and understandings among the Parties related to the subject matter therein. Excepts for exhibits attached thereto, no document, representation, inducement, agreement, understanding, or promise constitutes any part of the Consent Decree or the settlement it represents, nor shall they be used in construing the terms of the Consent Decree.

    4.    The Consent Decree and any injunctive relief ordered within applies solely to Swift Beef's operation and oversight of the Facility and Beef Plant, which are the subjects of the Water Permit and Air Permit, respectively, and the Lamb Plant which is subject to the Water Permit.

## IV. GENERAL PROVISIONS

    5.    The Consent Decree is a full and complete settlement and release of all claims alleged by Plaintiffs in the CWA NOI, the Supplemental CWA NOI, the CAA NOI, the Supplemental Complaint, and all other claims known to exist to Plaintiffs as of the date of entry of the Consent Decree, related to the Facility, the Beef Plant, the Lamb Plant, and Swift Beef's compliance with the Clean Water Act and Clean Air Act, as against Swift Beef, its officers, directors, employees, shareholders, consultants, contractors, or agents.

    6.    The Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Plaintiffs in this case or of any fact or conclusion of law related to those allegations.

    7.    The Consent Decree shall constitute a final, non-appealable judgment in this action and shall take effect on the day it is entered by the Court.

    8.    In the event that any part of the Consent Decree is deemed by a court of competent jurisdiction to be unlawful, void, or for any reason unenforceable, and if that part is severable from the remainder of the Consent Decree without frustrating its essential purpose,

then the remaining parts of the Consent Decree shall remain valid, binding, and enforceable. The Parties agree an essential purpose of the Consent Decree is a full and complete settlement and release of all claims as described above in Section II., paragraph 5.

9. If for any reason the Court should decline to approve the Consent Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

10. Each signatory to the Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of the Consent Decree and to execute and legally bind the Party he or she represents to this document. Each party acknowledges and represents that it has relied on the legal advice of its attorneys, who are the attorneys of its own choice, and that the terms of the Consent Decree have been completely explained to the party by its attorneys, and that the terms are fully understood and voluntarily accepted.

11. The Consent Decree may be signed in counterparts, and each such counterpart, including copies in PDF format, shall be deemed to be an original instrument, and its validity shall not be challenged on that basis.

## V. REQUIREMENTS

12. Swift Beef shall provide a copy of the Consent Decree to all officers, employees, and agents of Swift Beef whose duties might reasonably include compliance with any provision of the Consent Decree.

13. Upon entry of the Consent Decree, Swift Beef agrees to the following terms and conditions in full and complete satisfaction of all the claims covered by the Consent Decree:

    **a.** Swift Beef shall fully comply with the Water Permit's WET and ammonia limits, and shall comply with any updated, amended, or re-issued Water Permit for such time as Swift Beef is covered by such Water Permit. Nothing in

this sub-paragraph affects Swift Beef's ability to request that CDPHE terminate the Water Permit's coverage of the Facility as permitted under the terms and conditions of the Water Permit or as otherwise authorized by law.

  **b.**  Swift Beef shall fully implement the corrective measures provided by Woodard & Curran concerning the Facility, as required by the CDPHE August 6, 2020 Notice of Violation/Cease and Desist Order (attached as Exhibits C and D [#80 at 44–73]), and in accordance with paragraph 19 of the same August 6, 2020 Notice of Violation/Cease and Desist Order, which establishes a deadline of May 3, 2021 for implementing the corrective measures, subject to any revisions contemplated thereby.

  **c.**  Within seven days of receipt from Ramboll Engineering Company, Swift Beef will send Plaintiffs copies of any Performance Assessment (as defined in Exhibit F, Task 4 of the Ramboll Proposal) provided by Ramboll addressing operations at, and air emission from, Swift Beef's salt evaporator system at the Beef Plant. The scope of the Performance Assessment is set forth in the Ramboll Proposal, Task 4. The Performance Assessment shall be incorporated into the Consent Decree. Within eighteen (18) months of execution of the Consent Decree, Swift Beef shall fully implement a technically feasible solution strategy identified by Ramboll in the Performance Assessment, which may be a modification of the air scrubber system.

  **d.**  Upon entry of the Consent Decree and for a period of twenty-seven (27) months or until such time as Swift Beef's Water Permit coverage for the Facility is lawfully terminated, whichever is earlier, Swift Beef shall, no later than five (5) days following submission of any documents pertaining to

compliance with the Water Permit that are required to be provided to CDPHE, provide copies of those documents to Plaintiffs' designated representatives in electronic format.

   **e.**   Swift Beef shall make a payment, in lieu of a civil penalty authorized under 33 U.S.C. § 1365, in the amount of $300,000 to the Southern Plains Land Trust for land acquisition along the South Platte River downstream of the Lone Tree Creek confluence for the purpose of ecological protection and enhancement. The $300,000 payment will be made within thirty (30) days after the entry of the Consent Decree, shall be made by check payable to Southern Plains Land Trust, and shall bear the notation "Center for Biological Diversity and Food & Water Watch v. Swift Beef Company Consent Decree," with a copy provided to Plaintiffs at that same time.

   **f.**   Within fourteen (14) days of entry of the Consent Decree, Swift Beef shall pay Plaintiffs' attorney fees and costs in the amount of $200,000 in full and complete satisfaction of any claims Plaintiffs may have under the Clean Water Act for attorney fees and litigation costs and expenses. Such payment shall be made by check payable to "Public Justice."

14. In the event of an undisputed violation of the WET or ammonia limits in the Water Permit during the twenty-seven (27) month effective period of the Consent Decree, Swift Beef agrees to stipulated payments in lieu of civil penalties as follows:

   **a.**   $2,500 each for the first, second, and third violations;

   **b.**   $5,000 for the fourth, fifth, sixth, seventh, and eighth violations;

   **c.**   $10,000 for the ninth and subsequent violations.

For the purposes of this section, a WET test failure constitutes one enforceable violation; one

thirty (30) day average ammonia violation constitutes one enforceable violation; and one daily ammonia violation constitutes one enforceable violation. For violations, Swift Beef shall have any defenses available to it that exist under the Water Permit, or any successor Water Permit for the discharge of Facility wastewater to Lone Tree Creek, as well as any other defenses that exist under the Clean Water Act. In the event any government agency takes any enforcement action resulting in penalties, a Permit exceedance shall not constitute a violation of the Consent Decree. In the event there are stipulated payments, they shall be paid to Southern Plain Land Trust for land acquisition as described above.

## VI. FORCE MAJEURE

15. Force Majeure, for purposes of the Consent Decree, is defined as any event arising from causes beyond the control of Swift Beef, of any entity controlled by Swift Beef, that delays or prevents the performance of any obligation under the Consent Decree despite Swift Beef's reasonable efforts to fulfill the obligation. The requirement that Swift Beef exercise reasonable efforts to fulfill the obligation includes using reasonable efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the extent reasonably possible. Force Majeure does not include Swift Beef's financial inability to perform any obligation under the Consent Decree.

16. If any event occurs or has occurred that may delay the performance of any obligation under the Consent Decree, Swift Beef shall provide notice within seven (7) days of such event and describe the length or anticipated length of non-compliance, the circumstances causing non-compliance, the measures taken or to be taken to prevent or minimize non-compliance, and a schedule for implementation of the measure to be taken Provided that Swift Beef complies with the notice provision of this paragraph and Plaintiffs do not timely dispute Swift Beef's claim of Force Majeure pursuant to Paragraph 18 (or, if disputed, are unsuccessful),

then in the event that Swift Beef fails to comply or anticipate failing to comply with the requirements of the Consent Decree because of a Force Majeure event, such failure to comply, as described in the written notice to Plaintiffs under this paragraph, shall not be a violation of the Consent Decree and shall not result in any liability or other sanction. If such a Force Majeure event delays the time of performance of the obligations in either subparagraph 13(b) or 13(c), the parties shall jointly move the Court to extend the time for compliance with this Decree for the obligations in subparagraph 13(b) or 13(c) to a period equal to the actual delay resulting from such Force Majeure event.

## VII. RETENTION OF JURISDICTION AND DISPUTE RESOLUTION

17. This Court retains jurisdiction over this matter until termination of the Consent Decree for the purpose of resolving disputes arising under this Decree, enforcing compliance with the terms of this Decree, or entering orders modifying this Decree. The Parties may apply to the Court for any further order or relief that may be necessary regarding compliance with the Consent Decree.

18. The Parties agree to appoint the Honorable Michael E. Hegarty of the U.S. District Court for the District of Colorado as special master and any dispute regarding the terms or conditions of the Consent Decree will be submitted to the special master for resolution, and the special master may decide the dispute and award reasonable attorney fees and costs to either party. The process for resolving disputes is as follows:

    **a.** <u>Notice of Dispute</u>. The Party alleging a dispute shall first transmit a "Notice of Dispute" to the other Party, describing the substance of the dispute and proposing a remedy. The recipient of the Notice of Dispute shall have 14 days to respond.

    **b.** <u>Tender of Dispute</u>. If the Party alleging a dispute rejects the response of the other Party, or if the other Party fails to respond within fourteen (14) days, then the

Party alleging the dispute may tender the dispute to Judge Hegarty for expedited resolution within thirty (30) days. Submission shall be effectuated by e-mail to Judge Hegarty's chambers' email address: "hegarty_chambers@cod.uscourts.gov," with counsel of record for the Parties copied. The other Party shall have fourteen (14) days to respond to the Tendering Party's submission, subject to the same limitations on length. There shall be no replies.

    **c.**    <u>Resolution of Dispute</u>. Judge Hegarty may request the Parties to appear for a hearing, or to submit additional memoranda or materials, or to take other action(s) as may be appropriate to expediently resolve the dispute between the Parties. Judge Hegarty's resolution of a dispute shall be final and binding upon the Parties. However, Judge Hegarty's resolution of a dispute shall not modify the terms of the Consent Decree. In the event any relief recommended by Judge Hegarty would modify the terms of the Consent Decree, either party may move to amend the Consent Decree by filing the appropriate motion to be heard by Magistrate Judge Wang and the parties maintain all appeal rights.

## VIII. EFFECTIVE DATE

19.    This agreement shall take effect upon entry of the Consent Decree by the Court.

## IX. TERMINATION

20.    Unless otherwise modified by the Court, the provisions of the Consent Decree shall terminate twenty-seven (27) months from the date of entry of the Consent Decree, provided, however, Swift Beef has complied with the requirements in Paragraphs 13(b) and (c) above. If Swift Beef has not complied with the requirements of Paragraphs 13(b) and (c) above within twenty-seven (27) months from the date of entry of the Consent Decree, then the Consent Decree, except for Paragraphs 13(a), 13(d), and 14, shall remain in effect until such time as the obligations

in 13(b) and/or (c) are satisfied.

## X. NOTICES

21.     All notices and other communications regarding the Consent Decree shall be in writing and shall be fully given by mailing via first-class mail, postage pre-paid; by delivering the same by hand; or by sending the same via e-mail to the following addresses, or to such other addresses as the Parties may designate by written notice, provided that communications that are mailed shall not be deemed to have been given until three business days after mailing:

To Plaintiffs:

> Neil Levine
> Public Justice
> 4404 Alcott Street
> Denver, Colorado 80211
> (303) 455-0604
> nlevine@publicjustice.org
>
> Daniel C. Snyder
> Law Offices of Charles M. Tebbutt, PC
> 941 Lawrence Street
> Eugene, OR 97401
> (541) 344-3505
> dan@tebbuttlaw.com
>
> Hannah Connor
> Center for Biological Diversity
> P.O. Box 2155
> St. Petersburg, Florida 33731
> (202) 681-1676
> hconnor@biologicaldiversity.org
>
> Tarah Heinzen
> Food & Water Watch
> 36 N Buffalo St.
> Portland, OR 97217
>
> (202) 683-2457
> theinzen@fwwatch.org

To Swift Beef:

> JBS USA Holdings, Inc.

        Attn: Legal Department
        1770 Promontory Circle
        Greeley, CO 80634

        Steven P. Case
        McGrath North Mullin & Kratz, PC LLO
        1601 Dodge St., Ste. 3700
        Omaha, NE 68102
        Fax: 402-341-0216
        Email: scase@mcgrathnorth.com

## XI. PUBLIC STATEMENTS

22.    The Parties shall agree to all language included in any press releases issued in connection with entry of the Consent Decree ("Press Release"), and will not make any statements in a manner that are materially inconsistent with the terms of the Consent Decree or the Press Release.

## XII. MODIFICATIONS

23.    Modifications to the Consent Decree may be made only upon written agreement of the Parties which shall be filed with the Court.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this action for purposes of enforcing compliance with the terms of this Judgment.

DATED: May 3, 2021

                        FOR THE COURT:
                        JEFFREY P. COLWELL, CLERK

            By: s/ B. Wilkins
                        B. Wilkins
                        Deputy Clerk